

**FILED**
May 03, 2021
ST-2020-CR-00032
**TAMARA CHARLES**
**CLERK OF THE COURT**

**IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. THOMAS AND ST. JOHN**
**★★★★★★★★★★★★★**

| | | |
|---|---|---|
| PEOPLE OF THE VIRGIN ISLANDS, | ) | |
| | ) | CASE NO. ST-2020-CR-00032 |
| Plaintiff, | ) | |
| | ) | 14 V.I.C. § 2256(a) |
| vs. | ) | 19 V.I.C. § 604(a)(1) |
| | ) | 14 V.I.C. § 1508 |
| KAREEM T. MATTHIAS, | ) | |
| | ) | |
| Defendant. | ) | |

Cite as: VI Super 46U

## MEMORANDUM OPINION AND ORDER

¶1    **THIS MATTER** is before the Court on:

1. Defendant's Motion and Memorandum To Suppress ("Motion"), filed March 9, 2021; and

2. People's Response To Defendant's Motion To Suppress ("Response"), filed March 29, 2021.

¶2    The search and seizure of Kareem T. Matthias ("Matthias") was reasonable because there was a valid warrant and Matthias was in close proximity to, and inside of, the place to be searched. Law enforcement also had probable cause to detain and search Matthias because he was fleeing a place in which there was probable cause to believe there were illegal firearms and other evidence of criminal activity.

### I.    INTRODUCTION

¶3    On January 30, 2020, the FBI Gang and Violent Crime Task Force, together with the V. I. Police Department, executed a search warrant at building 7, apartment 36 of Michael Kirwan Terrace Housing Community in St. Thomas.[1] "The search warrant specifically sought firearms, firearm parts, components, accessories, ammunition, and other items related to firearms."[2]

¶4    While law enforcement officers were entering the subject apartment, Matthias was intercepted by marine interdiction agents as he was leaving the apartment. Matthias resisted attempts by the agents to stop him until he was eventually subdued by Taser, hand-cuffed and arrested.[3] A .45 caliber Glock magazine containing nine (9) rounds of .45 caliber ammunition was

---

[1] February 11, 2020 Affidavit of Sergeant Richard Dominguez.

[2] *Id.*

[3] *Id.*

found on his person, along with seventy-five (75) grams of marijuana, small ziplock bags and $116.00 in cash.[4] A search of the apartment yielded a .45 caliber Glock firearm which accepts the .45 caliber magazine found on Matthias.

¶5    The ensuing Information charged Matthias with Unauthorized Possession of Ammunition in violation of V.I. CODE ANN. tit. 14 V.I.C. § 2256(a); Unauthorized Possession of Marijuana with Intent to Distribute in violation of 19 V.I.C. § 604(a)(1); and Delaying and Obstruction in violation of 14 V.I.C. § 1508. On April 22, 2021, this Court held a hearing on Matthias' Motion. Sergeant Richard Dominguez ("Dominguez") of the V.I. Police Department and assigned to the FBI Gang and Violent Crime Task Force testified.

¶6    In his Motion, Matthias argues that the ammunition, marijuana, paraphernalia, as well as the statements he made to police, should be suppressed because his arrest and the seizure of these items violated his Fourth Amendment rights. Matthias states he was behind the apartment complex; officers showed up and people dispersed; he entered into the apartment and shortly after exited it; he had a white plastic bag in his hand the whole time; after he left the apartment, he walked towards the officers who gave him multiple commands; he ignored these commands; and these officers subsequently detained him.[5]

¶7    Matthias contends that warrantless searches are presumed unreasonable and that this was a warrantless search.[6] Matthias also claims that none of the exceptions to the warrantless search apply. Matthias insists that the officers did not have articulable facts that a person had committed or was in the process of committing a criminal act, since the report from the marine interdiction agents recited that Matthias was sitting outside, he stood up, and several other people walked away. Matthias likewise asserts that there was no evidence he knew of the officers' arrival and that "[s]tanding up and walking away from a seated position does not give rise to reasonable suspicion."[7] Thus, Matthias argues, his stop was not valid as an investigatory stop.

¶8    Matthias further argues that his alleged *Terry* frisk was unconstitutional because a pat-down must be based on a reasonable belief that the person is armed and presently dangerous. Matthias states that the officers "never questioned or investigated any actions by [him] that would afford *Terry* protection or lead one to believe that they were doing an investigatory stop at the onset. The officers further did not express any fear or apprehension that Mr. Matthias was armed or dangerous."[8]

¶9    Lastly, Matthias argues that pursuant to *United States v. Flores Uriostegui*,[9] the Court should look at the validity of Matthias' seizure starting at the inception of seizure.[10] Matthias

---

[4] *Id.*
[5] Def.'s Mot. 1-2.
[6] Def.'s Mot. 3.
[7] Def.'s Mot. 4.
[8] Def.'s Mot. 5.
[9] 2010 U.S. Dist. LEXIS 144557 (N.D. Ga. 2010).
[10] Def.'s Mot. 5.

argues the seizure began when officers first showed up and ordered him to get on the ground and at that point, there was no objectively reasonable suspicion of criminal activity.[11] He maintains that the items seized and the statements made, were thus fruit of the poisonous tree and should be excluded. He also contends that the People now have the burden of producing clear and convincing evidence that the arrest was lawful or that there was some other exception to the Fourth Amendment warrant requirement.[12]

¶10     The People state that officers arrived with a warrant; upon announcing their arrival, a voice stated "I'm coming, I'm coming" from the first floor. After waiting, the police again announced their presence and heard the same response but, this time, coming from the second-floor. Matthias was spotted by agents fleeing out the back door with a plastic bag. Finally, after refusing to stop, Matthias was wrestled to the ground and taken into custody after a struggle.[13] The People argue there was a proper and valid search warrant, and that pursuant to Supreme Court precedent in *Muehler v. Mena*,[14] individuals on the premise may be detained by police. The People argue that:

> It does not matter that the Defendant decided to enter the residence once the police were present. The police were justified in detaining the Defendant when he was inside a property to be searched. The fact that the Defendant tried to then run away from the property does not negate law enforcement's right to detain.[15]

¶12     The People go on to argue that independent probable cause existed outside the search.[16] The People state that Matthias was inside a residence where there already was probable cause to believe there might be firearms or related materials, as evidenced by the fact that a warrant was issued for those items in that location.[17] The People further aver that Matthias was heard rummaging around the property — including between floors — and that he answered the police several times but never answered the door, which could lead to a reasonable belief he was doing something illegal.[18]

¶13     The People also assert that not only was the search and seizure valid under the warrant and based on probable cause, but it was also a valid *Terry* stop based on reasonable suspicion.[19] The People argue that the officers can point to specific articulable facts and inferences that Matthias may be armed and dangerous – to wit, that he was rummaging around in a house believed to have firearms, did not answer the door, and fled from police.[20] The People, therefore, allege that for three different reasons the search and seizure of Matthias was valid.

---

[11] Def.'s Mot. 6.
[12] Def.'s Mot. 6-7.
[13] People's Resp. 1-2.
[14] 544 U.S. 93 (2005).
[15] People's Resp. 3.
[16] People's Resp. 3.
[17] People's Resp. 3-4.
[18] People's Resp. 4.
[19] People's Resp. 4.
[20] People's Resp. 5.

## II.   LEGAL STANDARD

### A.   Searches and seizures under the Fourth Amendment

¶14    The Fourth Amendment of the United States Constitution provides that:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.[21]

¶15    Both the affidavit in support of a warrant and the warrant itself "must state with particularity the place to be searched."[22] The United States Supreme Court held that "officers executing a search warrant for contraband have the authority 'to detain the occupants of the premises while a proper search is conducted.'"[23] This is sometimes referred to as the "Summers rule."[24] The rule also allows for the detention of individuals within the immediate vicinity of the area named in the warrant.[25]

¶16    Without a warrant, an officer may still be able to conduct a search and seizure under the Fourth Amendment. Generally, an officer is permitted to stop and search a person if there is probable cause.[26] There is probable cause if "the facts available to [the officer] would warrant a person of reasonable caution in the belief that contraband or evidence of a crime is present."[27] Further, officers are permitted to stop people for investigative purposes and pat them down if there is reasonable suspicion that the person may be armed and dangerous – a so-called *Terry* stop.[28]

---

[21] U.S. CONST. amend. IV. The Fourth Amendment of the U.S. Constitution applies to the U.S. Virgin Islands by virtue of Section 3 of the Revised Organic Act. *Simmonds v. People*, 53 V.I. 549, 555 & n.3 (V.I.2010).

[22] *Nicholas v. People*, 56 V.I. 718, 739 (V.I. 2012) (citing Revised Organic Act of 1954, § 3, 48 U.S.C. § 1561, reprinted in V.I. CODE ANN., Historical Documents, Organic Acts, and U.S. Constitution at 159-60 (1995 & Supp. 2013) (preceding V.I. CODE ANN. tit. 1)).

[23] *Muehler v. Mena*, 544 U.S. 93, 98 (2005) (quoting *Michigan v. Summers*, 452 U.S. 692, 705 (1981)).

[24] *See Michigan v. Summers*, 452 U.S. 692 (1981); *see also* Amir Hatem Ali, Note, *Following the Bright Line of Michigan v. Summers: A Cause for Concern for Advocates of Bright-Line Fourth Amendment Rules*, 45 HARV. CIV. RTS. - CIV. LIBERTIES L. REV. 483, 486 (2010) ("This Note follows the trajectory of Summers's bright-line rule as the lower courts have applied it and illustrates that some courts have extended the boundaries of the Summers rule to permit significant intrusions on liberty that would certainly not have been upheld under the Court's traditional balancing approach.").

[25] *Vargas v. Superintendent Kauffman*, 2020 U.S. Dist. LEXIS 249216, at *24-25 (E.D. Pa. 2020) (quoting *Bailey v. United States*, 568 U.S. 186, 201 (2013)) ("Additionally, the Summers rule applies to the detention of individuals within the 'immediate vicinity of the premises to be searched.'").

[26] *People v. Looby*, 68 V.I. 683, 694 (2018).

[27] *Id.* at 701 (quoting *Florida v. Harris*, 568 U.S. 237, 243 (2013)).

[28] *Terry v. Ohio*, 392 U.S. 1, 27 (1968) ("Our evaluation of the proper balance that has to be struck in this type of case leads us to conclude that there must be a narrowly drawn authority to permit a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime.").

¶17   For a *Terry* stop, "[t]he officer need not be absolutely certain that the individual is armed. The issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger" and the officer must be able to point to "specific reasonable inferences which he is entitled to draw from the facts in light of his experience."[29] Lastly, if a person has been arrested by officers, officers are entitled to search the person to prevent the destruction or concealment of evidence, as well as to ensure the arrestee has no weapons with which to harm officers or tools with which he may affect his escape.[30]

## III.   ANALYSIS

### A.  Suppression hearing testimony

¶18   The affidavit in support of the warrant in this case was signed by Dominguez and attested before a neutral magistrate on January 29, 2020. That same day, Magistrate Judge Henry Carr, III issued a search warrant for 8500 Kirwan Terrace, building 7, apartment 36, which commanded officers to search for evidence of a crime therein, specifically for "a firearm and its component parts, ammunition, and any documentation related to said firearm[.]" The warrant had to be executed within fourteen (14) days of its issuance.

¶19   On Thursday, January 30, 2020, at approximately 9:15 a.m., Dominguez and others executed the warrant. Dominguez testified at the hearing that approximately twelve (12) other agents and officers from the V.I. Police Department, FBI, U.S. Postal Service, Customs and Border Patrol, and Homeland Security Investigations approached the building. He testified that some agents approached from the rear of the building and Dominguez and others approached from the front. Dominguez testified that after doing a knock and announce and commanding that the door be opened, he heard a voice close to the door say, "I'm coming. I'm coming" and after giving some time for the voice to comply, he repeated his identification and command and heard the same voice say again, "I'm coming. I'm coming" from the second-floor overlooking the officers. Dominguez further stated that after this, agents in the back radioed to him and he went to the back of building 7.

¶20   Dominguez then testified that three (3) agents had a man in custody who was handcuffed on the ground between buildings 7 and 8 with an open plastic grocery bag lying nearby and that this bag contained more than an ounce of a leafy-green substance. Dominguez testified that the agents had done an initial pat down and alerted him to the presence of a hard object in the man's pocket. Upon doing his own pat down and not readily identifying the object, although testifying it did not feel like a knife or gun, Dominguez removed the object and discovered a firearm magazine. Dominguez testified during the hearing that he read the man his Miranda rights. He also testified that the man's voice was the same voice he heard saying "I'm coming" and that he asked the man why he did not open the door to the apartment, to which the man stated he had said, "I'm coming."

---

[29] *Id.*

[30] *Chimel v. California*, 395 U.S. 752, 762-63 (1969); *see also Blyden v. People*, 53 V.I. 637, 652 (V.I. 2010).

When asked if he came to the door he replied "no." Dominguez stated he recognized the man during the hearing and identified Matthias, the Defendant.

### B. The items found on Matthias will not be suppressed as there was a valid warrant and probable cause to arrest him

¶21    The affidavit for the warrant describes the property to be searched as "8500 Kirwan Terrace, Building 7, Apartment 36, in St. Thomas, US Virgin Islands . . . including the curtilage[31] and all locked or closed containers and compartments contained therein[.]" It further describes the particular things to be seized as: "1. Firearms, firearm parts, components and accessories; 2. Ammunition, components and accessories related to ammunition; 3. Documentation related to firearms; and 4. Photographs depicting or containing firearms or ammunition and related matter." The warrant itself names the same address of "8500 Kirwan Terrace, Building 7, Apartment 36" and incorporates the description of the place from the affidavit. It also incorporates the same description of items listed above while ordering officers to search for "evidence of the crime, to include but not limited to: a firearm and its component parts, ammunition, and any documentation related to said firearm, as previously described." The warrant was signed by a neutral magistrate and was executed within the period mandated within.

¶22    The search of the apartment was therefore conducted under a valid and proper search warrant. In their reports, several marine interdiction agents who were assigned to the rear team wrote that Matthias was seated behind the apartment when they arrived. Upon arrival, they allege he ignored orders to get on the ground, entered the building, then reemerged out the back and moved past them while they attempted to detain him. After a struggle, they allege they were able to restrain him by twice using a Taser. Dominguez testified that he heard and spoke to someone in the apartment, and that when the agents searched the apartment, no one was found. He also testified that he received an alert from the rear team which brought him to the back of the building where Matthias was restrained and handcuffed.

¶23    Dominguez read Matthias his rights and spoke with him, and Matthias stated that he had said "I'm coming" but he did not actually come to the door. Dominguez further testified that the voice in the apartment was the same as Matthias' voice. While Matthias argues that the police did not provide him with written documentation that he signed advising him of his rights, there is no requirement under *Miranda* that a defendant should be read his rights and then sign a document, merely that his rights be read to him, which Dominguez testified he did. Therefore, Matthias' statements to Dominguez will not be suppressed.

¶24    Having identified Matthias as the one moving about inside the apartment at the time Dominguez knocked and announced the search, his detention and search of his person was therefore, valid. Police have the right to detain those on a premise being searched to prevent the destruction of evidence and to ensure their safety. Items, such as a firearm or ammunition, can be portable and hidden on a person. As Matthias was within the apartment and its curtilage during the

---

[31] *Curtilage*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("The land or yard adjoining a house, [usually] within an enclosure.").

execution of the warrant, his detention and subsequent search is valid and reasonable under the Fourth Amendment as it is a search and seizure supported by a proper warrant. It does not become unreasonable simply because Matthias moved offsite and past officers during the warrant's execution.

¶25     The Court declines to adopt Matthias' argument that the items found on and near him by Dominguez were fruits of the poisonous tree since *United States v. Flores Uriostegui* states that the validity of a seizure should be found at its inception, and when the rear team arrived at the apartment and ordered Matthias on the ground, he was sitting at a table. First, *Flores Uriostegui* is not binding precedent, as it is from outside this jurisdiction, and the Court declines to adopt its analysis here. Second, Matthias was within the curtilage and immediate vicinity of the apartment when the rear team arrived. Third, Matthias, by entering the apartment, placed himself directly within the place to be searched while Dominguez was announcing his presence and the search. As mentioned above, to allow someone to enter, move around in, and then leave an area during the execution of a search warrant would allow for the potential destruction of evidence.

¶26     Further, even assuming *arguendo* that one may remove themselves from the scope of a warrant by fleeing, there is probable cause to detain and arrest someone who refuses lawful orders and attempts to flee a place being searched under a warrant. To hold otherwise would render announced and warrant-based searches ineffective, as evidence could be secreted on persons away from the place at the first knock. Dominguez testified that he twice ordered the person inside to open the door. The marine interdiction agents averred in their reports that they ordered Matthias to stop and raise his hands as he fled. There is probable cause to stop and search someone who ignores the lawful orders of law enforcement and who is also fleeing an area in which there is probable cause to believe criminal activity is taking or has taken place. Once arrested, the officers were permitted to search Matthias under the search incident to arrest doctrine.

¶27     Having found that the detainment and search of Matthias was reasonable under both the warrant requirement and separately under the probable cause and search incident to arrest standards, the Court need not address whether the search and seizure would have been reasonable under the standards of a *Terry* stop.

## IV.     CONCLUSION

¶28     On January 29, 2020, a magistrate judge found probable cause for the execution of a search warrant on 8500 Kirwan Terrace, building 7, apartment 36, for firearms and related items. Dominguez and other law enforcement agents executed the search warrant the following day. Matthias was seated outside the apartment and entered it as Dominguez knocked and announced the search. Despite calling out that he was coming to open the door, Matthias instead moved around in the apartment and then exited out the rear. He was eventually detained by the rear team of agents who had to twice use a Taser to stop and incapacitate him.

¶29     Dominguez was notified, and he arrived at the scene between buildings 7 and 8 and searched Matthias as well as an open grocery bag nearby that Matthias reportedly had with him. Dominguez recovered a firearm magazine, cash, small plastic baggies, and over an ounce of a

leafy-green substance identified as marijuana. No one else was found within the apartment. Matthias moved to suppress the items found on him and his statements arguing the search and seizure violated his Fourth Amendment rights.

¶30    However, because Matthias was within the curtilage and immediate proximity of, and later entered, the place where law enforcement officers were conducting a valid warrant-based search, officers were permitted to detain him and search his person for weapons or contraband. Since Matthias did not comply with orders to open the door or to stop, and he attempted to flee an apartment in which there was probable cause to believe criminal activity involving firearms was taking place, gave the officers further probable cause to stop and search him. After Matthias' arrest, officers were permitted to search him incident to that arrest. Lastly, because Matthias was Mirandized, his statements to Dominguez will not be suppressed.

Accordingly, it is hereby

**ORDERED** that Defendant's Motion and Memorandum To Suppress, filed March 9, 2021, is **DENIED**; and it is further

**ORDERED** that a copy of this Memorandum Opinion and Order shall be directed to counsel of record.

DATED: April 30 , 2021    _____

**DENISE M. FRANCOIS**
Judge of the Superior Court of the Virgin Islands

ATTEST:

**TAMARA CHARLES**
Clerk of the Court

BY: _____
**LATOYA A. CAMACHO**
Court Clerk Supervisor   5 / 3 / 2021